Your Honors, may it please the Court, Carl Worsham for Petitioner, Mr. Oleh Kuraiev. I'd like to reserve five minutes for rebuttal. Your Honors, this case is resolved on a straightforward application of Soto Olarte, its progeny, and the government's failure to even mention that line of cases in its response brief. The Soto Olarte line of cases explains that the Real ID Act requires IJs, as part of their Totality of Circumstances Inquiry, to properly interrogate each inconsistency and omission on which they rely to make their credibility determination. Proper interrogation requires a two-step process. First, the IJ must give the applicant an opportunity to explain the omissions or inconsistencies on which the IJ seeks to rely. Second, if an explanation is forthcoming, the IJ is required to address that explanation in a reasoned manner. That is, they have to give reasons why they do not find that explanation persuasive. It is dispositive in this case that the IJ did not comply with Soto Olarte. Counsel, if we were to agree with you on that point, how does that help your claim based on religious persecution? Because the IJ alternatively found that the evidence wasn't sufficient to establish that even exclusive of credibility, right? I don't think that's correct. So, I'm not sure why the BIA referred to that finding as an alternative holding. It first said that he was not credible as to his political persecution, and then moved from there and said, because you lack that presumption, you are not going to get my cutting out. On my end, you're just fine. Judge Bennett, are you having trouble? I did find just at the end that counsel was cutting out. Okay, I agree. I apologize for that. You didn't make it to Hawaii. So, just back up and do a little, maybe back up 30 seconds in your argument. Absolutely. I'm not sure why the BIA called that an alternative holding. The IJ, as it walked through the analysis, explained that, well, first, I think the IJ misunderstood the dual-pronged nature of Mr. Kudiev's argument. But the IJ found that even if the court were to credit his testimony, he only expressed the fear of religious persecution by Russian-backed actors in Crimea, none in the Ukrainian mainland by Ukrainian government on account of his religion. Did you take that issue up to the BIA? Yes. So, the credibility of termination goes to both. So, the issue here is, again, the IJ doesn't seem to understand or at least didn't seem to grapple with the dual-pronged nature of Mr. Kudiev's argument. He's saying, mainland Ukraine, I can't return because of political persecution. I can't return to Crimea because of religious persecution. But on the religious persecution, did you appeal to the BIA and say, that's wrong, if we win on credibility, there is sufficient evidence of religious persecution in Ukraine? Yes. So, my understanding of the record is that Mr. Kudiev appealed and sought that the IJ's credibility determination be overturned on the basis that he was entitled to asylum on the dual-pronged nature of his claim, both as to religion and as to the political persecution. So, the credibility determination was attacked facially in a way that it was attacked that the inconsistencies and omissions that were relied on were not enough. Now, a different argument was made below, but the same credibility determination was attacked generally. Yeah, I don't think that's an answer to my question, but I heard your answer. Okay. Your Honor, I have no specific questions. I'd like to reserve the remainder of my time for rebuttal. Judge Kobayashi, anything? No, thanks. Okay. We'll hear from opposing counsel, please. Good afternoon. Good morning. May it please the court. Matthew Spurlock on behalf of the United States. In this case, substantial evidence supports the agency's finding that Petitioner was not credible in his testimony. Under the INA, the immigration judge is required to consider the applicant's demeanor, the consistency of the applicant's testimony, the consistency of the applicant's testimony with other evidence, as well as the plausibility of the applicant's account of what occurred. And the evidence in this case substantially supports the immigration judge's findings. Now, while the Petitioner's counsel makes his entire brief basically was about the fact that or the argument that the Petitioner was not interrogated properly by the immigration judge during his testimony. First of all, the Petitioner was represented by counsel during his proceeding.  And first, I mean, second point I would make would be that in his appeal to the board, Petitioner never raised any issues whatsoever about arguing that he was never interrogated. Counsel, I'm reading the brief right now. And it says, and I quote, Accordingly, if an IJ fails to address an applicant's explanation for a discrepancy or inconsistency, an adverse credibility finding is improper. And that's in the section on credibility. Why isn't that line in the brief enough to clearly alert the BIA that there have to be explanations? I mean, that the Petitioner has to be given an explicit opportunity to explain discrepancies or inconsistencies that the IJ is going to rely on. Yes, Your Honor. That portion that you read from is from, I believe, the several pages of the boilerplate concerning adverse credibility determinations by immigration judges. But even if it's boilerplate, it goes on, the BIA must provide a Petitioner with reasonable opportunity to offer an explanation. Even if it's boilerplate, it's boilerplate because it's so clearly established in our case law. And why wouldn't, in this case, where I think the record is that Petitioner wasn't given that opportunity, why wouldn't that be sufficient to put the BIA on notice that that was an issue? Because in the Petitioner's argument in that brief, they don't argue that they were not given the opportunity to explain inconsistencies. They argued that there weren't inconsistencies, which is actually counter to the position that we weren't given the opportunity. The complete argument in the brief before the board was simply that the inconsistencies weren't inconsistencies. They were just expanding on what was an issue. But counsel, I'm again reading from the brief where they talk about something that happened. And other than that, the respondent was not asked either by the court or the DHS counsel to provide any additional explanation. So in essence, the court uses inadequate questioning as a ground for finding inadequate explanation to use the latter to find the respondent non-credible. That strikes me as bringing this to the attention of the BIA in a, I mean, not a perfect way, but way more than good enough in my view. I understand your point, Your Honor. And I would just submit that in order for the board to address what specific inconsistencies or what, in this case, as Petitioner mentions in their own brief, there are several inconsistencies that are mentioned of varying degrees, very important ones, and also some that aren't as important. But if you don't identify which specific ones you weren't given the opportunity to explain, how would the board be able to address those? I would just submit that in many of those inconsistencies, they say we didn't have an inconsistency. These were just expanding on what was previously in the application. If they had specifically said we weren't allowed to explain this and here's the explanation, then that might be different. But I don't think that's exactly what they did. But if I could move on, there are at least two primary inconsistencies that even Petitioner concedes they were asked about or allowed to give an explanation for why they weren't consistent. And I would speak specifically about the May 2017 incident, which is probably the primary incident here, in which Petitioner alleged that while he was living in Ukraine, or at least he was renting a house or a room there, people came into his apartment when he wasn't there and trashed the place is what his claim was. But he was specifically asked on cross-examination after he provided this information for the first time in his hearing, he was asked why was the May 2017 incident not specifically mentioned in your asylum application? That seems like a pretty clear opportunity to explain why that was the case. At first, the first counsel for Petitioner argued that it was in fact in the asylum application that it was on page five. But then they were confronted that that was in May 2017. That was a May 2018 incident, at which point they became very confused. And then ultimately, Petitioner admits that the application was an error and that in fact, his asylum... Is failure to provide additional detail an inconsistency? Is this an important enough detail that wasn't provided that it would serve by itself to allow an adverse credibility finding? Maybe it would, Your Honor. I'm not sure. I think that goes to substantial evidence. But I think I think the important thing in this case is is the concept of totality of the circumstances. And I think if you look at the fact that that particular incident, which is key to their entire case, in fact, that that's that's one of the there's three primary incidents that we're talking about. That's the first one. The fact that that's not mentioned in the asylum application is important because then they also don't mention the March 2018 incident as well, which is where he claims that he was hit in the back of the head and he escaped with his life. But he doesn't mention any details about that in his asylum application. And then the May 2018 incident, which he claims that he was evicted from his apartment in Kiev, is important because he doesn't mention that in his asylum application. And he doesn't testify about it in his direct examination at all. It's not mentioned once. I'd like you also to whether now or you don't have a lot of time, but I'd like the government's position on if we were to disagree with you on credibility. What what is it that that we should deny the petition with regard to anyway? Yes, Your Honor. As we argued in our brief, the board properly found that petitioner did not challenge the immigration judge's alternate findings with regard to certainly with Kat, because they don't challenge Kat at all. And they don't challenge they don't challenge some of the alternate findings with regard to well-founded fear of persecution. The reason why that's important is because obviously, as we mentioned in Kat, in the Kat claim, the petitioner can still obtain Kat even if they're found to be not credible. Because the immigration judge is required under circuit law to look at the the circumstances that are provided by the petitioner in terms of country conditions and other conditions that might be raised to determine whether or not they would be eligible for Kat. But on Kat, if we were to find that the credit if we were to find a credibility determination error and that that went to political opinion, wouldn't that be sufficient to also send the Kat claim back, but only on political opinion? I think with with regard to Kat, to the extent that if you were to find that the credibility determination was not at all, I think that it could be sent back. But I think to the extent that the petitioner has already been found by the by the agency that absent the Kat finding, absent the adverse credibility finding, he wouldn't be he still wouldn't be eligible for Kat. I think that that is not something that they would review again. I think that's already been determined by the agency. With regard to the religious issue that you mentioned earlier, Judge, yeah, that's correct. The immigration judge specifically found absent the adverse credibility finding, he would be eligible for religious protection in Crimea just based on the conditions that he presented, but he determined that he'd be able to relocate elsewhere within Ukraine where they don't treat people of his religion the same way. If they have no further questions, I'll just. Thank you, counsel. Thank you. Do you have a bit of rebuttal time left? Actually, quite a bit of time left. Go right ahead. Just a few points, Your Honor. So first, as to as to waiver, I think it would be generous to say that the government actually argued waiver in this case in a single sentence on I think it's a page 18 of their brief. They simply mentioned that Mr. Kudya did not raise the same arguments, but waiver in this circuit is about claims and not about arguments. And the language used in the government's brief is that Mr. Kudya did not raise these specific arguments. And so by their own treatment of that, they would they would have to concede that he did not waive these arguments. Moving on to this briefly, what my friend on the other side said about Mr. Kudya's claim for the BIA being counter to what's being argued now. Mr. Kudya argued that the inconsistencies were not, in fact, inconsistencies, but Sotolakde is about what inconsistencies the IJ finds. And so just as we argue in our brief here before this court, that we believe that there are many of those inconsistencies are not, in fact, inconsistencies at all. But the inconsistencies, as they were found by the IJ, needed to be interrogated. And in fact, Sotolakde explains that that's actually Perez Arceo says that's actually why we have this process is to make sure that the inconsistencies are, in fact, inconsistencies. Going on to judgment that you were correct, that the difference between a 2017 date and 2018 date makes no difference. Mr. Kudya said in his testimony that the raid was included on page five. On page five, it says that his apartment was raided in 2018. The only raid in the record is a raid on his apartment in 2017. So the only inconsistency is the date. And Mr. Kudya was consistent in his personal testimony at the hearing, but it was May 9th, 2017. And he also included a letter from his neighbor that said that May 9th, 2017 was the date of the raid on his apartment. So that that's corroborated by other evidence and certainly the date by itself would not be enough to find him to uphold the credibility determination. Moreover, the discussion about the three instances, Mr. Kudya did include in his I-599 form a reference to being attacked by a right wing extremist. And he then later added detail about that attack in March, 2018 at the Kiev airport. But the only thing that was omitted was in May, 2018, was he omitted the eviction from his apartment in Kiev. But that omission by itself would not be enough because one of the things this court has consistently held is that any discrepancy that cannot be understood or viewed as advancing or as an attempt to advance a claim of persecution, that cannot go to adverse credibility or cannot be used to find adverse credibility. And in this case, excluding the 2018 eviction from his apartment hurts his claim, doesn't help it. And then finally, on that point, the explanation for why it was not included in inadvertence was not something that the IJ actually responded to. So it still remains uninterrogated. And so for all these reasons, we would ask that this court would vacate the credibility determination and give Mr. Kudya the opportunity, an opportunity required by the Real ID Act to explain the inconsistencies and omissions on which the IJ relied. Thank you, counsel. Thank you both for your helpful arguments. We appreciate them very much. We'll take this matter under advisement and just double check on this. Yes, that's the last case on our calendar today. So we'll stand in recess. Off record, please. Hear ye, hear ye. All persons having had business with the Honorable United States Court of Appeals for the Ninth Circuit will now depart for this court for this session stands adjourned.
judges: Christen, Kobayashi, Bennett